IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JACQAUS L. MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | 4:03cv3100 |
| | ) | |
| vs. | ) | MEMORANDUM AND ORDER |
| | ) | |
| SCOTT E. HAYNE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

   This matter is before the court on the following pending motions filed by the plaintiff, JacQaus L. Martin: (1) filing no. 125, the plaintiff's Motion for Summary Judgment; and (2) filing no. 128, the Motion Showing Damages That the Plaintiff Suffered. Trial in this matter is scheduled to begin on November 14, 2005, on the plaintiff's claims against the two remaining defendants in this action, Corporal Wayman and Case Worker Gissler, each in his individual capacity only.

   I find that factual issues preclude the entry of summary judgment, and this case will proceed to trial. The issues to be addressed at trial will include the plaintiff's damages. Because the plaintiff is a prisoner subject to the Prison Litigation Reform Act ("PLRA"), he cannot recover damages for emotional distress *unless* he proves that he also suffered physical injury. See 42 U.S.C. § 1997e(e): "Limitation on recovery. No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." However, 42 U.S.C. § 1997e(e) does not require physical injury as a prerequisite for declaratory or injunctive relief or nominal and punitive damages. Royal v. Kautzky, 375 F.3d 720, 723 (8th Cir. 2004), cert. denied,125 S.Ct. 2528 (2005).

   The plaintiff's claims arise out of a strip search which occurred on May 16, 2000. As I have previously stated (filing no. 94): "'[S]trip search' is an 'umbrella term' covering several increasingly intrusive procedures. In addition to the general term, defined as ['an inspection of a naked individual, without any scrutiny of the subject's body cavities,'] ... a '"visual body cavity search" extends to visual inspection of the anal and genital areas' and ... a '"manual body cavity search" includes some degree of touching or probing of body cavities.'..." Wood v. Hancock County Sheriff's Dept., 354 F.3d 57, 63 (1st Cir. 2003) (citations and some internal quotation marks omitted). This case involves a visual body cavity search.

   As framed by the Pretrial Order (filing no. 126) and my previous decisions, this case involves the following claims, characterized in the Pretrial Order as controverted and

1

unresolved issues: (1) whether the plaintiff was subjected to a visual body cavity search which was constitutionally unreasonable in the circumstances; (2) whether the visual body cavity search was conducted to retaliate for or to discourage the plaintiff's exercise of the right to make a legal telephone call; and (3) whether the search was conducted with excessive force.

## Constitutionally Unreasonable Search

In filing no. 94, I dismissed the plaintiff's claim of sexual assault,[1] stating in pertinent part: "The plaintiff's first claim fails because a visual body cavity search is not per se a sexual assault, and the plaintiff has not alleged any facts beyond the nature of the search itself which would suggest a sexual attack on his person. Visual body cavity searches have been upheld when conducted pursuant to constitutionally reasonable policies."

Thus, visual body cavity searches have been upheld when conducted pursuant to constitutionally reasonable policies. See, e.g., Bell v. Wolfish, 441 U.S. 520 (1979) (policy of conducting visual body cavity searches of all pretrial detainees after contact visits with persons outside the prison upheld); Franklin v. Lockhart, 883 F.2d 654, 656 (8th Cir. 1989) (policy requiring visual body cavity searches of inmates on punitive status, in administrative segregation, and in need of protection justified by security concerns); Goff v. Nix, 803 F.3d 358 (8th Cir. 1986), (visual body cavity searches of all inmates as a condition of any movement outside their living unit or outside the confines of the penitentiary justified notwithstanding their intrusiveness), cert. denied, 484 U.S. 835 (1987). See also Elliott v. Lynn, 38 F.3d 188, 191 (5th Cir. 1994):

> Under appropriate circumstances, visual body cavity searches of prisoners can be constitutionally reasonable .... The test of reasonableness

---

[1] As I have previously stated (filing nos. 81 and 94), the plaintiff does not deny that he refused a direct order to cooperate in the search on May 16, 2000. At the time, he was confined in the Disciplinary Segregation Unit of the Nebraska State Penitentiary.

Corporal Wayman ordered the plaintiff to submit to a strip search and then reported to Case Manager Gissler that the plaintiff had refused to do so. Case Manager Gissler then went to the bullpen area and ordered the plaintiff to comply with the strip search directive. When the plaintiff refused to comply with the order, Gissler assembled the Use of Force Team (or "React team") which included Zier, Haney, Wayman, Edelman, and Bolli. The officers entered the bullpen area of the Segregation Unit, subdued the plaintiff, placed restraints on him and conducted the strip search. Part of the search involved spreading the plaintiff's buttocks to enable a visual body cavity search. See Incident Report attached to Affidavit of Officer Chad Haney (Exh. 3 to filing no. 59), reporting that he did spread the plaintiff's buttocks. The plaintiff characterizes the search as a sexual assault on his person.

under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

The plaintiff insists that the defendants lacked a reasonable basis for the strip search of his person, as the plaintiff had no contact with any person outside of the institution, or, in fact, beyond the segregation unit, before the search. The defendants have not yet indicated the basis for the decision to conduct the strip search on May 16, 2000.[2] Presumably the evidence will indicate whether strip searches are conducted of all inmates in segregation who move anywhere within the unit, or strip searches are conducted of all inmates who wish to make telephone calls, or whatever the policies were in May of 2000 and why.

### Retaliation

In filing no. 120, my Memorandum and Order of October 5, 2005, at 3-4, I expressly stated that the plaintiff's claim of retaliation had been preserved for trial. That claim should have been incorporated into the Pretrial Order as a controverted and unresolved issue. **Accordingly, the Pretrial Order is hereby amended to add the issue of retaliation, i.e., "whether the visual body cavity search was conducted to retaliate for or to discourage the plaintiff's exercise of the right to make a legal telephone call," as a controverted and unresolved issue, in order to prevent manifest injustice**. See Fed. R. Civ. P. 16(e).

General principles governing prisoner claims of retaliation include the following. Although prison authorities have a great deal of discretion in running their institutions, they may not use their discretion to retaliate against an inmate for exercising First Amendment rights. See, e.g., Rouse v. Benson, 193 F.3d 936, 940 (8th Cir. 1999) (a prisoner may not be transferred in retaliation for his exercise of constitutionally protected rights). See also Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003) (reversing dismissal of a retaliation claim):

---

[2]As I noted in filing no. 94, "a factual issue exists regarding the underlying reason(s) for the visual body cavity search of the plaintiff on May 16, 2000. The plaintiff's verified complaint contains uncontradicted assertions that the search constituted part of a pattern of intimidation and punishment of the plaintiff for exercising a protected right. Corporal Wayman and Case Worker Gissler have not mentioned any penological purpose for the search, and they have failed to provide any record on which the court, without indulging in pure speculation, could grant summary judgment on the basis of qualified immunity."

In dismissing Mitchell's retaliation claim, the District Court failed to recognize that "[g]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." Allah v. Seiverling, 229 F.3d 220, 224-25 (3d Cir. 2000) (*quoting* Thaddeus-X v. Blatter, 175 F.3d 378, 386 (6th Cir. 1999) (en banc)). A prisoner alleging retaliation must show (1) constitutionally protected conduct, (2) an adverse action by prison officials "'sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights,'" and (3) "a causal link between the exercise of his constitutional rights and the adverse action taken against him." Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) (*quoting* Allah, 229 F.3d at 225) (alteration in original).

### Excessive Force

I held in filing no. 120 at 3-4 that, as the plaintiff and the defendants were proceeding on the basis of an existing claim of excessive force in this case, as stated in the Pretrial Order, I would allow the plaintiff's claim of excessive force to proceed. The Eighth Circuit Court of Appeals explained the principles governing prisoner claims of excessive force in Treats v. Morgan, 308 F.3d 868, 872 (8th Cir. 2002), as follows: "The Eighth Amendment protects inmates from the unnecessary and wanton infliction of pain by correctional officers, Whitley v. Albers, 475 U.S. 312, 319 ... (1986), regardless of whether an inmate suffers serious injury as a result. Hudson v. McMillian, 503 U.S. 1, 9 ... (1992). Officers are permitted to use force reasonably 'in a good-faith effort to maintain or restore discipline,' but force is not to be used 'maliciously and sadistically to cause harm.' Id. at 7.... Factors to be considered in deciding whether a particular use of force was reasonable are whether there was an objective need for force, the relationship between any such need and the amount of force used, the threat reasonably perceived by the correctional officers, any efforts by the officers to temper the severity of their forceful response, and the extent of the inmate's injury. Id. See also Hickey v. Reeder, 12 F.3d 754, 758 (8th Cir. 1993)." Accord Fillmore v. Page, 358 F.3d 496, 503-10 (7th Cir. 2004).

THEREFORE, IT IS ORDERED:

1. That filing nos. 125 and 128, the plaintiff's Motion for Summary Judgment and the plaintiff's Motion Showing Damages That the Plaintiff Suffered, are denied in light of the factual issues discussed above;

2. That this case will proceed to trial on November 14, 2005; and

3. That filing no. 126, the Pretrial Order, is amended pursuant to Fed. R. Civ. P. 16(e), in accordance with prior orders of the court and in order to prevent manifest injustice, to add the following uncontroverted and unresolved issue: "Whether the visual

body cavity search on May 16, 2000 was conducted to retaliate for, or to discourage the plaintiff's exercise of, the right to make a legal telephone call."

DATED this 4th day of November, 2005.

BY THE COURT:

s/ Joseph F. Bataillon
JOSEPH F. BATAILLON
Chief District Judge